**FILED**

March 08, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ JU

DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CHARLES WILLIAM TIDBALL, IV,** | § | |
| **TDCJ No. 02305826,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-21-CA-01169-OLG** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner Charles William Tidball, IV's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) wherein Petitioner challenges the constitutionality of his 2020 state court conviction for indecency with a child. Also before the Court are Petitioner's supplemental memorandum in support (ECF No. 1-4), Respondent Bobby Lumpkin's Answer (ECF No. 8), and Petitioner's Reply (ECF No. 9) thereto.

Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

**I. Background**

In January 2020, Petitioner plead guilty to one count of indecency with a child by contact, a second-degree felony. (ECF No. 10-6 at 85-90). Pursuant to the plea bargain agreement, Petitioner judicially confessed to committing the charged offense and waived his right to a jury trial in exchange for the State's recommendation that he receive a sentence of

twelve years of imprisonment. *Id*. Following a separate hearing, the trial court accepted Petitioner's plea and sentenced Petitioner to twelve years of imprisonment. *State v. Tidball*, No. 17-02-12297-CR (454th Dist. Ct., Medina Cnty., Tex. Jan. 21, 2020); (ECF Nos. 10-4 at 36-49 (hearing); 10-6 at 97-99 (Judgment)).

Because he waived the right to appeal as part of the plea bargain agreement, Petitioner did not directly appeal his conviction and sentence. (ECF No. 10-6 at 90). Instead, he challenged the constitutionality of his conviction and sentence by filing an application for state habeas corpus relief on February 4, 2021. *Ex parte Tidball*, No. 92,373-01 (Tex. Crim. App.); (ECF Nos. 10-7, 10-8). After remanding the case back to the trial court for an evidentiary hearing, the Texas Court of Criminal Appeals eventually denied the application without written order on November 17, 2021. (ECF No. 10-1).

Petitioner filed the instant federal habeas petition and supplemental memorandum a few days later on November 23, 2021. (ECF No. 1). In the petition and supplemental memorandum, Petitioner raises three allegations that were rejected by the Texas Court of Criminal Appeals during his state habeas proceedings—namely, that (1) his plea was unknowing and involuntary because his trial counsel improperly advised him that he would automatically receive a twenty-year sentence if he went to trial, (2) his trial counsel rendered ineffective assistance by failing to interview witnesses or prepare for trial, and (3) his trial counsel rendered ineffective assistance by failing to move to disqualify the trial judge and allowing Petitioner to unknowingly relinquish his right to an impartial court.

## II. Timeliness

Respondent first contends the allegations raised in Petitioner's federal habeas petition are barred by the one-year limitation period of 28 U.S.C. § 2244(d). Section 2244(d) provides, in relevant part, that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

In this case, Petitioner's convictions became final February 20, 2020, when the time for appealing the judgment expired. *See* Tex. R. App. P. 26.2 (providing a notice of appeal must be filed within thirty days following the imposition of a sentence). As a result, the limitations period under § 2244(d) for filing a federal habeas petition challenging his underlying conviction and sentence expired a year later on February 20, 2021. Petitioner did not file his § 2254 petition until November 23, 2021—nine months after the limitations period expired—thus, his petition would be barred by the one-year statute of limitations unless it is subject to either statutory or equitable tolling.

Petitioner is entitled to statutory tolling under 28 U.S.C. § 2244(d)(2). Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." As discussed previously, Petitioner first challenged the instant conviction in a state habeas application filed on

February 4, 2021, which was later denied by the Texas Court of Criminal Appeals on November 17, 2021.  Thus, during the time the state habeas application was pending, the limitations period was tolled for a total of 287 days, making Petitioner's § 2254 petition due by December 6, 2021.[1]  Again, Petitioner's § 2254 petition was filed in November 2021, and was therefore timely.

Respondent does not dispute that Petitioner was entitled to statutory tolling.  Rather, Respondent argues that Petitioner's conviction became final on the day he was sentenced (as opposed to 30 days afterward) because he expressly waived his right to appeal in the plea agreement.   According to Respondent, Petitioner had no expectation of relief through direct appeal due to his plea bargain and thus is not entitled to the 30 days normally given to petitioners to seek direct review.

While not expressly stated, Respondent essentially seeks new precedent finding that, in cases where a defendant waived his right to appeal as part of a plea bargain agreement, his conviction becomes final for limitations purposes on the day the judgment is entered as opposed to thirty days after the imposition of the sentence.  But to support this novel approach, Respondent cites only a smattering of district court cases from the Southern District of Texas.  Absent more persuasive authority, this Court holds that Petitioner's conviction became final February 20, 2020—30 days after the trial court sentenced him to prison.  His federal habeas petition is therefore timely.

---

[1]      Because the end of the limitations period fell on a Saturday, the limitations period continued to run until the following Monday.  *See Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998) (finding Rule 6(a) of the Federal Rules of Civil Procedure applies to computation of AEDPA's limitations period).

### III.  Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous.  *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself.  *Richter*, 562 U.S. at 102.  Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold."  *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's

determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## IV. <u>Merits Analysis</u>

Pursuant to a plea bargain agreement, Petitioner judicially confessed to committing the offense of indecency with a child by contact, acknowledged that the range of punishment for this second-degree offense was two years to twenty years of imprisonment, and waived his right to a jury trial in exchange for a sentencing recommendation of twelve years. (ECF No. 10-6 at 85-90). Petitioner now challenges the constitutionality of his guilty plea by arguing that the plea was involuntary and that he was denied his right to effective counsel. Because he voluntarily plead guilty to the conviction he is now challenging under § 2254, however, Petitioner waived the right to challenge all non-jurisdictional defects in his proceedings. Moreover, these allegations were rejected by the state court during Petitioner's state habeas proceedings. As discussed below, the state court's rejection of these claims was neither contrary to, nor an unreasonable application of, Supreme Court precedent. *Richter*, 562 U.S. at 101.

### A.    <u>Petitioner's Plea Was Voluntary</u>

It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254

6

(5th Cir. 2000).  A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted).  And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion.  *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012).

The record in this case indicates Petitioner's plea was a voluntary and intelligent choice and was not a result of any misrepresentation.  On the day of his trial, Petitioner appeared in open court represented by attorney Woodrow Halstead.  (ECF No. 10-4 at 36-49).  Counsel indicated his belief that Petitioner was competent, and Petitioner stated he was satisfied with counsel's representation.  *Id*. at 41-42.  Petitioner was then admonished by the trial court about the charges against him, the range of punishment he was facing, and the rights he was giving up by not going to trial.  *Id*. at 42-44.  The plea agreement was also shown to Petitioner, who indicated that he had discussed the issues with counsel and understood the rights he was giving up.  *Id*. at 43-46.  Counsel confirmed he had been through these documents thoroughly with Petitioner and that Petitioner understood the documents he was signing.  *Id*.  Following this discussion, the trial court approved the plea agreement.  *Id*. at 46.

Petitioner's formal declarations in open court carry "a strong presumption of verity" and constitute a formidable barrier to any subsequent collateral attack.  *United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  But even

without the in-court declarations, the voluntariness of Petitioner's plea is demonstrated by his signature on the plea-bargain agreement itself.  (ECF No. 10-6 at 85-90).  Among other things, the plea agreement stated Petitioner was pleading guilty to one count of indecency with a child (a second-degree felony), listed the relevant punishment range, and explained the rights that Petitioner would be waiving by entering a plea of guilty.  *Id*.  The plea agreement also stated he had read and understood the terms of the plea agreement, that his attorney has explained the legal effects of the agreement, and that he is knowingly and voluntarily waiving his rights and pleading guilty.  *Id*.

Petitioner's trial counsel also signed the agreement, stating that he discussed with Petitioner the rights he was waiving and the legal consequences of his plea.  *Id*. at 88.  Counsel indicated his belief that Petitioner was mentally competent, understood the admonishments and the consequences of the plea, and was "freely, voluntarily, knowingly, and intelligently" entering his guilty plea.  *Id*.  The trial judge then gave his approval of the waivers, finding that Petitioner "understands the consequences of his plea" and that the plea was "freely, voluntarily, knowingly, and intelligently made."  *Id*.

Petitioner's signature on the guilty plea documents is *prima facie* proof of the validity of the pleas and is entitled to "great evidentiary weight."  *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)).  Thus, because Petitioner has not provided any evidence or argument that would overcome these "strong presumptions of verity," this Court denies any allegation made by Petitioner concerning the validity of his guilty plea.  *See Blackledge*, 431

U.S. at 74 (finding "[t]he subsequent presentation of conclusory allegations which are unsupported by specifics is subject to summary dismissal.").

**B.**      **Claims Waived by the Guilty Plea** **(Claims 2, 3)**

By entering a knowing, intelligent, and voluntary guilty plea, a defendant waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 265 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013).   This rule encompasses errors of constitutional dimension that do not affect the voluntariness of the plea, including ineffective-assistance claims unless the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (waiving claims of ineffective assistance, except for claims related to voluntariness of plea).   As such, the only claims that survive a guilty plea are those implicating the validity of the plea itself. *Tollett*, 411 U.S. at 267; *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).

Here, Petitioner contends he was denied the right to effective counsel by counsel's failure to interview witnesses—his mother and his cousin—to prepare for a trial (Claim 2). Petitioner also argues that counsel was ineffective for failing to move to disqualify the trial judge, Daniel Kindred, which resulted in an impartial tribunal (Claim 3).   But Petitioner fails to relate these allegations to the voluntariness of his guilty plea, much less overcome the presumption of verity that is afforded to his plea documents and formal declarations in open court.   Accordingly, Petitioner's claims are waived by his knowing, voluntary, and intelligent guilty plea.

Moreover, Petitioner waived his claim regarding an impartial tribunal on the record *prior* to entering his guilty plea.   (ECF No. 10-4 at 38-39).   According to Petitioner, counsel should have attempted to disqualify Judge Kindred due to his participation in Petitioner's prosecution as

9

the acting District Attorney prior to being appointed to the bench in September 2019.  Before

addressing Petitioner's plea agreement, however, Judge Kindred explained that he was the

elected district attorney at the time Petitioner was indicted and stated that he would allow a

visiting judge to preside over Petitioner's case if he preferred.  *Id*.  Petitioner indicated that he

had no concerns about Judge Kindred's prior role, and waived any potential conflict of interest

that may arise because of this role.  *Id*.  Because Petitioner waived any argument that Judge

Kindred had a conflict of interest, the state habeas trial court recommended that relief be denied

on this allegation during Petitioner's state habeas proceedings.  Petitioner has not demonstrated

that the Texas Court of Criminal Appeals' ultimate rejection of this allegation was either

contrary to, or an unreasonable application of, clearly established federal law.  Relief is therefore

denied on Petitioner's second and third claim.

## C.    The Remaining Ineffective-Assistance Claim (Claim 1)

Petitioner does make one allegation that, if successful, may implicate the voluntariness of

his guilty plea: that his trial counsel advised him that he would automatically be found guilty and

receive a twenty-year sentence if he went to trial.  According to Petitioner, counsel's actions

improperly coerced him into accepting the plea agreement and waiving his right to trial.  As

discussed below, this allegation does not warrant federal habeas relief.

### 1.    The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel are

reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668

(1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right

to counsel unless he demonstrates both that (1) counsel's performance was deficient, and (2) this

deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

To establish counsel's performance was deficient, a petitioner must first show his counsel's performance fell below "an objective standard of reasonableness." *Id*. at 688-89. When determining whether counsel performed deficiently, courts must be highly deferential to counsel's conduct, and counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. But, in the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S at 59. This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d at 206 (citations omitted); *see also Young v. Spinner*, 873 F.3d 282, 285 (5th Cir. 2017). This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*.

2.      Counsel Was Not Deficient

Petitioner contends that his plea was involuntary and coerced because counsel advised him that he would be found guilty and automatically sentenced to twenty years of imprisonment

11

if he chose to go to trial over accepting the plea offer.  But as discussed previously, the plea agreement and Petitioner's formal declarations in open court demonstrate Petitioner's awareness of the "relevant circumstances and likely consequences" of his plea.  *Bradshaw*, 545 U.S. at 183. Petitioner's plea agreement also stated he understood the terms of the plea agreement, that his attorney has explained the legal effects of the agreement, and that the plea was entered "freely and voluntarily, and without any coercion, duress or promise of benefit[.]"  (ECF No. 10-6 at 87).  Petitioner also affirmed in open court that he was satisfied with the advice of his counsel and denied that he had been threatened in any way in order to obtain the plea.  (ECF No. 10-4 at 41).  The record thus contradicts Petitioner's assertion that he was coerced by counsel to plead.

Furthermore, Petitioner raised this allegation during his state habeas proceedings.  During the evidentiary hearing held on Petitioner's allegations, Petitioner testified that one of his trial attorneys, Brian Daniel, stated that "if [Petitioner] took it to trial [he] would automatically be found guilty and be given 20 years."  (ECF No. 10-4 at 100).  Counsel also allegedly conveyed his belief that Petitioner was guilty and that he had a "duty" to see that justice was done—he "needed to see [Petitioner] sign the plea deal for 12 years to be put in prison."  *Id*.  Petitioner's mother reiterated at the hearing that she heard counsel tell Petitioner he would receive 20 years if the case went to trial.  *Id*. at 87.

Interestingly, neither party called Petitioner's trial counsel to testify at the hearing. Instead, the State submitted an affidavit from counsel addressing Petitioner's assertions of ineffective assistance.  (ECF No. 12-5 at 139-40).  According to counsel, "at no time did either I or Mr. Halstead tell [Petitioner] that if he took his case to a jury, he would receive a sentence of twenty years automatically."  *Id*.  Rather, counsel explained to Petitioner that the State was

offering a 12-year sentence when the range was 2 to 20 years, but that if the plea were rejected, the State planned to reindict Petitioner on a different charge that carried a minimum sentence of 25 years.  Counsel explained his belief that, because of certain "non-privileged, non-custodial admissions made by [Petitioner], combined with the explicit nature of the complaining witness' expected testimony," there was "a very strong possibility" that Petitioner could be convicted of an offense that would carry a minimum sentence of 25 years if he rejected the plea.  *Id*. at 51.

Based on counsel's affidavit, the state habeas trial court rejected Petitioner's allegations and found that he failed to demonstrate that counsel was ineffective under the *Strickland* standard.  (ECF No. 10-4 at 13-14, 138).  These findings and conclusions were adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application.  (ECF No. 10-1).  Such determinations are entitled to a presumption of correctness unless they lack fair support in the record.  *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Petitioner fails to show that the state court's ruling on trial counsel's performance was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record.  Indeed, Petitioner has failed to furnish this Court with any evidence, much less any clear and convincing evidence, undermining the state court's credibility determinations or showing the state habeas court's factual findings on this subject were incorrect.  *See Matamoras v. Stephens*, 783 F.3d 212, 216 (5th Cir. 2015) (recognizing the presumption of correctness afforded a state habeas court's factual findings applies absent clear and convincing evidence to the contrary); *Ward v. Stephens*, 777 F.3d 250, 268 (5th Cir. 2015) (same).  Petitioner's conclusory and unsupported allegation that counsel

coerced him into pleading guilty is not enough to establish deficient performance under *Strickland*. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). Therefore, Petitioner fails to establish that his guilty plea was involuntary due to any alleged deficiencies in counsel's performance.

       3.       <u>Petitioner has not established prejudice</u>.

Regardless, even assuming counsel was deficient, Petitioner still cannot show he would not have accepted the current plea and would have instead insisted on going to trial but for counsel's alleged coercion. *Armstead*, 37 F.3d at 206. Again, such an assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*. Here, the record is silent as to whether Petitioner would actually have made the decision to plead not guilty and go to trial had counsel not expressed his opinion that Petitioner would be found guilty and given the maximum sentence.

However, the record does indicate that counsel fully explained Petitioner's rights and the plea agreement to Petitioner, that Petitioner understood the plea was for a second-degree felony with a possible sentence of up to twenty years of imprisonment, and that Petitioner admitted he committed the offense and was voluntarily pleading guilty. The record also indicates that Petitioner had been made aware of inculpatory facts possessed by the prosecution, who intended to reindict Petitioner for a first-degree felony if he rejected the plea offer. Thus, based on the record before the Court, it appears unlikely Petitioner would have chosen to go to trial and face a possible minimum sentence of twenty-five years instead of taking the plea for twelve.

14

4.        Conclusion

In light of the record evidence supporting the voluntariness of his guilty plea, in addition

to the fact Petitioner failed to prove counsel's performance was deficient or his plea was

involuntary due to ineffective assistance of counsel, this Court must find Petitioner entered into

his plea voluntarily, knowingly, and intelligently.   Moreover, Petitioner completely failed to

prove that, but for his attorney's actions, he would have chosen to proceed to trial.  Petitioner has

therefore failed to establish a valid claim for relief.  *Hill*, 474 U.S. at 58.  Accordingly, federal

habeas relief must be denied because Petitioner fails to meet his burden of proof under the

AEDPA.  28 U.S.C. § 2254(d).

## V. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA).  *See*

Rule 11(a) of the Rules Governing § 2254 Proceedings;  *Miller–El v. Cockrell,* 537 U.S. 322,

335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  If a district

court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate

"that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to

show "that reasonable jurists could debate whether the petition should have been resolved in a

different manner or that the issues presented were 'adequate to deserve encouragement to

proceed further.'"  *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or

argument.  *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set

15

forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

## VI.  Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and habeas corpus proceedings.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Charles William Tidball, IV's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this the ___8th___ day of March, 2023.

_____

**ORLANDO L. GARCIA**
**United States District Judge**